UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>R. BROOKE DUNN and NICHOLAS P. HOWEY,<br><br>    Defendants. | 2:09-CV-2213 JCM (LRL) |

**ORDER**

Presently before the court is plaintiff U.S. Securities and Exchange Commission's (hereinafter "SEC") motion for partial summary judgment (doc. #52) to which defendant R. Brook Dunn has responded (doc. #56), and the SEC replied (doc. #59). Defendant Dunn has also moved for summary judgment (doc. #54), to which the plaintiff has responded (doc. #56), and the defendant has replied (doc. #61). Plaintiff has also filed a motion in limine to exclude testimony from the defendant's expert (doc. # 60). Defendant has responded (doc. #65).

Plaintiff SEC alleges that defendant Dunn, while he was a vice president at Shuffle Master, engaged in insider trading when he gave co-defendant Nicholas Howey confidential information regarding Shuffle Master's impending negative announcement about its stock. Dunn gave Howey this information in exchange for tickets to the musical production Jersey Boys, which he and his wife planned to use on their anniversary trip. Howey, in turn, relied on this information and immediately

**James C. Mahan**
**U.S. District Judge**

1  sold all of his call options and virtually all of his stock in the company after weeks of heavy buying.
2  Howey also bought 570 "put options"[1] to cover his loss in case the stock price did decrease, which
3  in fact occurred the next day when the public announcement was made. Consequently, on the day
4  of the announcement, Howey sold all of his "put options" and gained a nearly $200,000 profit, which
5  was abnormal for him (doc. #59).

6  Based on the alleged events, the SEC asserts that defendants Dunn and Howey violated
7  Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated
8  thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, as well as Section 17(a) of the Securities
9  Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), by engaging in insider trading. The parties have
10  filed competing motions for summary judgment on these claims.

**I.    Motions for Summary Judgment**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir. 1996); FED. R. CIV. P. 56©. The moving party bears the burden of presenting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) (articulating the standard for authentication of evidence on a motion for summary judgment).

When an insider, called a "tipper," discloses material, nonpublic information to an outsider, called a "tippee," the tippee has a duty to disclose material information or abstain from trading, which is "derivative" from that of the insider's duty. *Dirks v. SEC*, 463 U.S. 646, 662 (1983). The elements of tipper/tippee insider trading are: (1) the tipper possessed material, nonpublic information regarding the issuer or a security; (2) the tipper disclosed the information to the tippee; (3) the tippee traded in the issuer's securities while in possession of the information; (4) the tippee knew or should

---

[1] A call option is an agreement that gives an investor the right to buy a stock at a specified price within a specific time period, while a put option is a similar agreement with a right to sell, rather than buy. A call option is profitable when the underlying stock increases in price, whereas a put option is profitable when the underlying stock decreases in price. *See* Doc. #52 at 6.

**James C. Mahan**
**U.S. District Judge**

- 2 -

1 have known that the information was disclosed in violation of a relationship of trust; and (5) the
2 tipper benefitted by the disclosure to the tippee. *Id.* at 654–64.

3       As a part of proving the elements of insider trading, §10(b) of the Securities Act of 1934 and
4 Rule 10b-5, the SEC must prove that the tippee or insider acted with scienter. *See Dirks*, 463 U.S.
5 at 674. Scienter is defined as an intent to deceive or defraud. *Vucinich v. Paine*, *Webber, Jackson*
6 *& Curtis, Inc.*, 739 F.2d 1434, 1435 (9th Cir. 1984). Scienter requires that the insider (or tippee, if
7 the trader is not the insider) possess material, nonpublic information at the time of the trade, and that
8 the material nonpublic information be used in a trade. *SEC v. Ginsburg*, 362 F.3d 1292, 1297 (11th
9 Cir. 2004). Proof of knowledge of such information at the time of a trade gives rise to a strong
10 inference of use. *Id*.

11       An insider will be held liable under Rule 10b–5 for insider trading only where he fails to
12 disclose material, nonpublic information before trading on it in order to make "secret profits." *Id.*
13 at 654. Furthermore, insider trading may be proven by direct or circumstantial evidence. *See SEC*
14 *v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004); *SEC v. Warde*, 151 F.3d 42, 47–48 (2d Cir.
15 1998). Insider trading in "suspicious amounts or at suspicious times" is probative of "bad faith and
16 scienter." *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1117 (9th Cir. 1989) (citation
17 omitted).

18       However, there is usually no automatic inference that an "insider is bailing out" independent
19 of direct or circumstantial evidence: "when it is shown that an insider made a sudden sale of a
20 significant portion of his holdings of his corporation's stock and that subsequently, material adverse
21 information became public concerning the corporation which led to a significant drop in the price
22 of the stock." *Freeman v. Decio*, 584 F.2d 186, 197 n. 44 (7th Cir. 1978).

23       Here, neither party can show that there is no genuine issue of material fact supporting its
24 motion for summary judgment. The SEC alleges that because defendant Dunn was in dire need of
25 Jersey Boys tickets for him and his wife, Dunn told defendant Howey, during a less than ninety-
26 second phone call, about Shuffle Master's impending announcement in exchange for tickets.
27 Furthermore, the SEC alleges that Howey acted on this information when he decided to sell his call
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

options and stock in the company three minutes later. Howey then sent Dunn tickets as a result of this information. However, neither the SEC nor Dunn can produce definitive evidence with regard to what was actually said during the ninety-second phone call to establish scienter or a lack thereof; instead, they merely rely on inferences.

Defendant Dunn also argues that the alleged confidential information was not confidential because of Deutsche Bank's report, which predicted the negative financial news. This report was issued nearly a week before Dunn's conversation with Howey. Nonetheless, courts have usually held that these types of speculative reports are not as specific or certain as a tipper's direct statements to a tippee. *See Sec v. Mayhew*, 121 F.3d 44, 50–51 (2d Cir. 1997); *U.S. v. Mylett*, 97 F.3d 663, 666 (2d Cir. 1996) (suggesting that the tipper's information to the tippee was substantially more specific than the Wall Street Journal's speculative prediction).

Whether Howey relied directly on what Dunn allegedly said, or instead on some other source when he made the trades, is also a matter of speculation. *See Vucinich*, 739 F.2d at 1435 (finding summary judgment generally inappropriate where mental state is at issue, unless no reasonable inference supports the adverse party's claim) (citation omitted). Therefore, this court cannot say as a matter of law whether defendants Dunn and Howey committed these alleged offenses based upon the inferences derived from their telephone call. Instead, it should be up to the fact-finder to determine whether the alleged private information was discussed during the phone conversation and whether Howey acted upon this information when he made the trades a few minutes later.

## II.  Motion in Limine

Also before the court is plaintiff SEC's motion in limine (doc. #60) to exclude the entire testimony of defendant Dunn's expert, Charles R. Lundelius, an accountant and a certified fraud analyst. The SEC alleges in its motion that opinions one through three and eight are not relevant because these opinions opine that it was not financially rational or logical for Dunn to tip Howey with material inside information in January 2007.

Specifically, the SEC argues that it does not allege that Howey was provided with material inside information in January 2007. Instead, it is only concerned about the material information

James C. Mahan
U.S. District Judge

- 4 -

which was allegedly given in February of 2007. The SEC also alleges that these opinions are within the common sense of laypersons and therefore no expert is needed. *See Elsayed Mukhtar v. California State University, Hayward*, 299 F. 3d 1053, 1065 n.9 (9th Cir. 2002).

Furthermore, the SEC alleges that opinions four, five, and seven should be excluded because Lundelius did not employ reliable principles and methodology to reach his conclusions. It also alleges that opinion six should be stricken because it is not relevant and is nothing more than an attempt to bolster and clarify Howey's testimony.

The court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993), held that under Federal Rule of Evidence 702, judges are assigned the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* Further, the court held that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596*; see Rock v. Arkansas,* 483 U.S. 44 (1987).

Here, the court agrees with the SEC in that opinions one through three and eight are not necessary and are hereby excluded. Lundelius' testimony concerning "Project Blue Sky" and the January 2007 discussions are not relevant to the SEC's claims against Dunn, because the SEC does not allege that Dunn made these material disclosures to Howey. However, with regard to opinions four through seven, the court is inclined to allow Lundelius' testimony. Absent any clear evidence that Lundelius' findings are unreliable or irrelevant, this court will not exclude these opinions. *See Daubert*, 509 U.S. at 580. The court reserves the ability to weigh the methods, conclusions, and expertise of the expert at the time of trial.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff SEC's motion for summary judgment (doc. #52) is DENIED.

IT IS FURTHER ORDERED that defendant Dunn's motion for summary judgment (doc. #54) is DENIED.

**James C. Mahan**
**U.S. District Judge**

- 5 -

IT IS FURTHER ORDERED that the hearing set for July 14, 2011 is hereby VACATED.

IT IS FURTHER ORDERED that plaintiff SEC's motion in limine (doc. #60) is GRANTED as to expert Charles R. Lundelius' opinions one through three and eight, and is DENIED as to opinions four through seven.

DATED June 30, 2011.

_____
**UNITED STATES DISTRICT JUDGE**