UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

R. BROOKE DUNN and NICHOLAS P. HOWEY,

        Defendants.

2:09-CV-2213 JCM (VCF)

**ORDER**

Presently before the court is defendant R. Brooke Dunn's motions in limine numbers 1-6 to exclude evidence. (Doc. #75). The government has filed an opposition (doc. #79). Mr. Dunn has not filed a reply.

**Background**

Plaintiff SEC alleges that Mr. Dunn, while he was a vice president at Shuffle Master, engaged in insider trading when he gave co-defendant Nicholas Howey confidential information regarding Shuffle Master's impending negative announcement about its stock. Mr. Dunn allegedly gave Mr. Howey this information in exchange for tickets to the musical production Jersey Boys.

Mr. Howey allegedly relied on this information and immediately sold all of his call options and virtually all of his stock in the company after weeks of heavy buying. Mr. Howey also bought 570 "put options" to cover his loss in case the stock price did decrease, which in fact occurred the

**James C. Mahan**
**U.S. District Judge**

1  next day when the public announcement was made. Consequently, on the day of the announcement,
2  Mr. Howey sold all of his "put options" and gained an approximate $200,000 profit.
3       Based on the alleged events, the SEC asserts that defendants Dunn and Howey violated
4  Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, 15
5  U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5, as well as Section 17(a) of the Securities Act of 1933,
6  15 U.S.C. § 77q(a), by engaging in insider trading. The court previously denied the parties' motions
7  for summary judgment and trial is currently set for April 23, 2012. In anticipation of trial, Mr. Dunn
8  has filed the instant motions in limine pertaining to various items of evidence and anticipated
9  arguments.

## Discussion

Motion #1:    Exclusion of Evidence or Inference of Disclosure Prior to February 26, 2007

Mr. Dunn moves the court to exclude any evidence or argument that Mr. Dunn offered tips regarding nonpublic information concerning Shuffle Master at any time other than February 26, 2007. Mr. Dunn argues that because the government no longer alleges any such tips took place, evidence or argument relating to earlier tips are irrelevant, *see* Fed. R. Evid. 401 and 402, and unfairly prejudicial, *see* Fed. R. Evid. 403.

The government responds that discussions between Mr. Dunn and Mr. Howey prior to February 26, 2007, are relevant to prove, among other things, "Dunn and Howey's relationship, what Dunn told Howey about Shuffle Master, and the reasons why Howey invested in Shuffle Master." Opp. at 3:17. The government represents that it neither contends, nor plans to argue at trial, that any pre-February 26, 2007, discussions between Mr. Dunn and Mr. Howey constitute material nonpublic information in violation of the securities laws.

The court is persuaded that evidence of conversations and meetings between Mr. Dunn and Mr. Howey is relevant to describing to the fact finder the context of the Dunn/Howey relationship and providing background regarding the relevant investments into Shuffle Master. Accordingly, the court finds that such evidence is admissible. Fed. R. Evid. 401, 402. Additionally, in light of the

**James C. Mahan**
**U.S. District Judge**

- 2 -

government's representations, this court does not find any prejudicial effect that substantially outweighs the probative value of this evidence. *See* Fed. R. Evid. 403.

         Motion #2:    Exclusion of Expert Opinion 5.2 Regarding Mr. Howey's Rationale for Trading

The court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993), held that under Federal Rule of Evidence 702, judges are assigned the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* Further, the court explained that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596.

Here, Mr. Dunn moves the court to exclude the opinion of Michael G. Mayer, an expert retained by the SEC, regarding why Mr. Howey traded his Shuffle Master stock. Mr. Mayer's opinion first outlines Mr. Howey's trading methodology, and then opines that the methods Mr. Howey claims to employ contradict his explanations for the trades at issue. Specifically, in Opinion 5.2.1, Mr. Mayer canvasses the history of Shuffle Master stock prices, and ultimately concludes:

> If Mr. Howey had done his homework and reviewed the history of Shuffle Master's stock and option prices, he would have realized that the decline in option prices he saw in February was not unusual. Therefore, it is implausible that the decline in option value described by Mr. Howey was surprising enough for him to completely change gears and switch from a long to a short position.

Mot. in Limine, Ex. 2, pg. 15, Expert Report of Michael G. Mayer. In Opinion 5.2.2, Mr. Mayer explains the pricing dynamics of call options and put options, and concludes that "there is no value to [] information [that put prices exceed call prices] that would lead to trading." *Id.* at 18.

The court finds that the opinions expressed in 5.2.1 and 5.2.2 are permissible. In Opinion 5.2.1, Mr. Mayer is opining on the plausibility of Mr. Howey's explanation regarding his motivation to trade Shuffle Master stock, in light of prevailing market conditions. Such a determination assists the trier of fact, *see* Fed. R. Evid. 702, because while credibility determinations are generally left to the trier of fact, this opinion provides the jury with the context it needs to determine whether Mr. Howey's explanations are indeed credible. *See SEC v. Roszak*, 495 F. Supp. 2d 875 (N.D. Ill. 2007).

In *Roszak*, the court ultimately admitted an expert's testimony regarding the plausibility of a defendant's rationale for trading stocks. In so finding, the court explained that the expert opinion "gives much-needed context to [the defendant's] explanations for his stock purchases, which presume a technical understanding of the stock market and trading strategies." *Id.* This court agrees with the court in *Roszak* regarding contextual background of an expert opinion in cases of insider trading. Mr. Mayer's opinion regarding the relevant market conditions and how they would have impacted Mr. Howey's trading strategy is helpful to the trier of fact. Moreover, Mr. Mayer's opinion is conditional, and therefore does not usurp the jury's role as the arbiter of credibility. Accordingly, the court will admit Opinion 5.2.1.

The court will also admit Opinion 5.2.2 regarding the trading value of information regarding the price of put options relative to call options. This opinion also gives the jury much needed context regarding market dynamics. The defense is free to argue against Mr. Mayer's opinion regarding the significance of these pricing dynamics or offer its own explanations of Mr. Howey's subjective reasoning regarding these dynamics as they related to his trading practices.

Motion #3:  Exclusion of Expert Opinion 5.3 Regarding Mr. Howey's Trading Strategy and Experience

Mr. Dunn urges this court to exclude Mr. Mayer's opinion regarding the veracity of Mr. Howey's claimed explanation for his trading strategy. Mr. Mayer explains that the explanation is not tenable given the facts of what occurred in the market. As explained above, it is for the trier of fact to determine whether such explanations are credible or not.

However, in making this credibility determination, the court finds that Mr. Mayer's technical and specialized knowledge in stock trading and the markets will assist the trier of fact in determining whether market conditions were consistent with those that Mr. Howey explained would result in his buying put options. The court finds that Mr. Mayer's technical and specialized knowledge regarding the markets will benefit the trier of fact more than a simple comparison of Shuffle Master stock and options pricing.

James C. Mahan
U.S. District Judge

- 4 -

Accordingly, while Mr. Mayer may not opine as to whether Mr. Howey's explanations are credible, he may testify as to the relevant market conditions to assist the trier of fact in determining whether Mr. Howey's explanations comport with the reality of the market.

Motion #4:   Exclusion of Expert Opinion 5.4 Regarding Mr. Howey's Trading

In Opinion 5.4 Mr. Mayer concludes that Mr. Howey's trading "is consistent with what an investor would do if they had inside information on Shuffle Master." Mot. in Limine, Ex. 2, pg. 20. Mr. Dunn argues that this statement amounts to an opinion on the ultimate question of law – whether or not Mr. Howey engaged in insider trading.

The government counters that Opinion 5.4 does not impermissibly opine on an ultimate question of law, because Mr. Mayer never states that Mr. Howey did indeed engage in insider trading. Instead, Mr. Mayer analyzes six factors and determines that Mr. Howey's conduct is consistent with, though not necessarily the result of, insider trading.

The court finds that Opinion 5.4 does not impermissibly opine on an ultimate question. Rather, the testimony assists the trier of fact in determining whether the event Mr. Mayer opines is consistent with the facts. Such opinions are admissible. *See U.S. v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (admitting expert testimony that alleged victim's "behavior . . . as well as her in-court testimony, were 'quite consistent with that . . . of rape victims.'"). Similar to the situation in *Simmons*, here the expert is stating that Mr. Howey's trading behavior is consistent with the behavior of insider traders. Such an opinion does not establish that Mr. Howey himself engaged in insider trading, and the defendants are free to argue that he did not.

Though the court has found the opinion relevant, it still must decide if its probative value is substantially outweighed by the possibility of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403. The probative value of this evidence is slight. All Mr. Mayer establishes is that Mr. Howey's actions were consistent with the actions of insider traders. The trier of fact does not need much assistance to understand that insider traders attempt to maximize profit based on improper, nonpublic information. As such, drawing the same inference is just as likely without Mr. Mayer's testimony as it would be with it.

James C. Mahan
U.S. District Judge

The unfairly prejudicial effects of this testimony, however, are substantial. Hearing an expert equate Mr. Howey's trading practices to the generalized trading practices of insider traders may "improperly influence the jury's own assessment of the inference that is being urged." *United States v. Gonzalez-Maldonado*, 115 F.3d 9, 18 (1st Cir. 1997). In *Gonzalez-Madonado*, the First Circuit explained the special impact an expert's testimony may have on a jury's assessment of the evidence, explaining that an "expert's stamp of approval" might have undue influence. The court explained,

> Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged.

*Id.* at 18. Here, the jury is likely fully capable of understanding that Mr. Howey's actions were curious given the transactions he made relative to changes in the value of the securities. The inference is obvious. However, placing an "expert stamp of approval on the government's theory" the jury may give more weight to this inference than it otherwise would. *See id.*

Balancing the risk of unfair prejudice to the probative value of Mr. Mayer's opinion regarding the inferences to be drawn from Mr. Howey's trading strategy, the court does find the possibility of unfair prejudice to result. The court, however, does not feel that outright exclusion is warranted pursuant to Rule 403. Instead, the parties can propose limiting instructions, if appropriate, to prevent any possible unfair prejudice.

Motion #5:  Exclusion of Evidence or Argument Relating to the September 2007 Phone Call Between Mr. Dunn and Mr. Howey

Mr. Dunn seeks to exclude evidence of a telephone conversation initiated by Mr. Dunn to Mr. Howey in September 2007. Mr. Dunn argues that the government will seeks to draw an inference from this telephone conversation that Mr. Dunn somehow knew that Mr. Howey's November 26, 2007, trading was improper. Mr. Dunn requests that the court exclude this evidence arguing that it "has no relevance to Howey's trading seven months earlier and any inference of such a connection would be prejudicial to Dunn." Mot. in Limine 10:23-25.

James C. Mahan
U.S. District Judge

- 6 -

1  The government argues that the evidence is admissible pursuant to Rule 406, because Mr. Dunn has demonstrated a habit of calling Mr. Howey to inform him of important, pending events.

3  The court finds Rule 406 inapplicable. As explained in the Advisory Committee notes to Rule 406, habit "describes one's regular response to a repeated specific situation." The notes further elucidate the meaning of "habit" as used in Rule 406, by explaining that it:

> Is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving.

The government has failed to convince this court that Mr. Dunn's call to Mr. Howey constituted such a specific type of conduct in response to a regular and particular situation. This court finds that, as contemplated in the Federal Rules of Evidence, the term "habit" requires more consistency of action than has been shown here.

The court, however, remains unpersuaded by Mr. Dunn's relevance arguments and concludes that this evidence is relevant. The phone call is probative as it establishes that Mr. Dunn was aware of the SEC investigation into Mr. Howey's trading of Shuffle Master stock and wanted to inform Mr. Howey of the investigation. This allows for an inference that Mr. Dunn was aware of the allegedly improper trading. To the same effect, the phone call may lead to an inference that Mr. Dunn and Mr. Howey do indeed share information relating to the buying and selling of securities, and any resulting investigations from such transactions. The probative value of the evidence is admittedly weak, however, as the phone call does not directly establish improper trading on the part of Mr. Howey or knowledge of any such trading on the part of Mr. Dunn. Rather, Mr. Dunn could have simply called Mr. Howey out of concern for the affairs of a friend.

Regardless, Rules 401 and 402 do not mandate a court to inquire into the weight of evidence when ruling on admissibility. Mr. Dunn has not argued why this evidence should be excluded pursuant to Rule 403. Accordingly, the court will not exclude evidence or argument relating to the phone call.

**James C. Mahan**
**U.S. District Judge**

Motion #6:   Exclusion of Evidence or Argument Relating to Pretrial Motion Practice

The court denies the motion in limine regarding this court's actions on pretrial motions at this time. The court has not been presented with any argument regarding the context in which a party may seek to introduce such evidence, and thus cannot effectively determine the propriety of admitting or denying any such evidence. The parties may renew this motion at a more appropriate time.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant R. Brooke Dunn's motions in limine (doc. #75) be, and the same hereby are, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED February 14, 2012.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 8 -