# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.

R. BROOKE DUNN and NICHOLAS P. HOWEY,

        Defendants.

2:09-CV-2213 JCM (VCF)

## ORDER

Presently before the court is plaintiff Securities and Exchange Commission's (SEC) motion for an officer and director bar. (Doc. #90). Defendant, R. Brooke Dunn, filed an opposition (doc. #95), to which plaintiff has replied (doc. #98).

### Factual Background

The parties have settled all matters in this case except for the SEC's demand for a permanent officer and director bar against defendant. The parties decided it would be more fruitful to settle all claims, while leaving the issue of an officer and director bar to the court's discretion. The issue has been fully briefed, and is now ripe for review. The court further notes that the facts of the instant dispute are hotly contested by the parties. The court provides the following short summary of the allegations solely as background to the court's analysis of the instant issue.

**James C. Mahan**
**U.S. District Judge**

1    Mr. Dunn joined Shuffle Master's staff in 1996 and served as its senior vice president from
2    2001 to 2008. (Doc. #1 at ¶ 6). At the time of his employment, Mr. Dunn signed an employment
3    agreement and agreed to adhere to the company's code of conduct. (Doc. #52, Ex. 1 at 20-21). Both
4    documents had provisions which stated that required Mr. Dunn to keep company information
5    confidential. (Doc. #52, Ex. 1 at 20-24)

6    On January 16, 2007, Mr. Dunn, had dinner with a business contact named Nicholas Howey;
7    during that dinner the two men discussed Shuffle Master business. (Doc. #1 at ¶ 8). The men also
8    discussed defendant's upcoming trip to New York City and that Mr. Dunn needed tickets for the sold
9    out Broadway show, "Jersey Boys." (Doc. #52, Ex.1 at 75:8-23). Mr. Howey had procured "terrific"
10   theater tickets for defendant in the past, and he needed his help again. (Doc. #52 at 1:20). A few
11   days after the January 16 dinner, Mr. Howey bought Shuffle Master stock. (Doc. #1 at ¶ 11). In
12   February, 2007, Mr. Howey informed defendant that he was upset because he was losing money on
13   the stock he had purchased. (Doc. #1 at ¶ 14).

14   On February 26, 2007, Mr. Dunn attended a regularly scheduled executive board meeting
15   where he was informed that Shuffle Master was going to issue an announcement that it was not
16   going to meet its quarterly earnings target. (Doc. #1 at ¶ 15). Minutes later, Mr. Dunn called Mr.
17   Howey and allegedly disclosed the confidential information regarding the announcement. (Doc. #1
18   at ¶ 16). Mr. Howey immediately sold all of his Shuffle Master call options and stocks; three hours
19   later, he began buying Shuffle Master puts. (Doc. #1 at ¶ 18 and ¶ 19).

20   On February 27, 2007, Shuffle Master released its quarterly earnings announcement. (Doc.
21   #1 at ¶ 20). After the announcement, the price of Shuffle Master's stock dramatically declined while
22   the price of Shuffle Master puts increased exponentially. (Doc. #1 at ¶ 21). Mr. Howey sold all of
23   his Shuffle Master puts, resulting in an approximate profit of $237,000. (Doc. #1 at ¶ 22 and ¶ 23).

24   The SEC began its investigation of suspected insider trading in August of 2007. (Doc. #52,
25   Ex.1 at 115). Shuffle Master was provided a list with names of potential insider traders. (Doc. #52,
26   Ex.1 at 115). Mr. Dunn saw that Mr. Howey was on this list and notified him despite being told not
27   to by Shuffle Master's general counsel. (Doc. #52, Ex.1 at 122).

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

**Discussion**

Section 20(e) and 21(d)(2) of the of the Securities Exchange Act of 1934 authorizes a district court to prohibit a deliberate wrongdoer from serving as an officer and/or director of a public company. When considering an officer and director ban of any kind, the court must consider the following factors: 1) the egregiousness of the underlying securities law violation; 2) the defendant's repeat offender status; 3) the defendant's role or position when he engaged in the fraud; 4) the defendant's degree of scienter; 5) the defendant's economic stake in the violation; and 6) the likelihood that misconduct will recur. *SEC v. First Pacific Bancorp*, 142 F.3d 1186 (9th Cir. 1998) (citing *SEC v. Patel*, 61 F.3d. 137 (2nd Cir. 1995)). That said, the court has discretion in these hearings and is not obligated to apply every factor. *SEC v. Chester Holdings, Ltd.*, 41 F. Supp. 2d 505, 530 (D.N.J. 1999).

   *A.   Mr. Dunn's violation does not amount to egregious behavior*

In a case where a violation of securities laws is premised on an insider who discloses confidential information to a trader, that action is not egregious if the defendant "neither traded on the information himself nor derived on any direct personal profit." *SEC v. Sargent*, 329 F.3d 34, 39 (1st Cir. 2003). In *SEC v. Patel*, the district court found that "Patel's violations were not egregious in comparison with those of others and in view of the size of the loss avoided." *Patel*, 61 F.3d at 141. If this court compares Dunn's actions with those of other defendants in similar cases, the conclusion is the same as *Patel*.

In *SEC v. Sargent*, the defendant received inside information regarding a potential merger between two companies. 329 F.3d at 38. After receiving the tip, the defendant purchased 20,400 shares of stock in the acquiring company and sold it a few days after the merger was publicized, realizing a $141,768 profit. *Id*. Similarly, in *SEC v. Pacific Bancorp*, the defendant used his position as chief executive officer to engage in several financial transactions which violated multiple securities laws. *Pacific Bancorp*, 142 F.3d at 1189. These transactions resulted in a net gain of $688,000 to the defendant. *Id*.

. . .

1    In this case, Mr. Dunn did not personally gain any such profit from his alleged insider
2  tipping. In fact, Mr. Dunn traded the information for the opportunity to pay face value for
3  Broadway show tickets; he did not make any actual money off of this transaction. Without
4  speculating as to what the difference in the price of the tickets amount to, Mr. Dunn's violation
5  of the law– although inappropriate– does not amount to egregious behavior when compared with
6  the conduct of the defendants in *Sargent* or *Pacific Bancorp*. His only "profit" is the amount of
7  money he saved by buying the tickets at face value as opposed to on the secondary market.
8  While such actions may deserve a sanction, this court does not find them "egregious."

9    B.    *Mr. Dunn is not a repeat offender*

10    Whether a defendant has previously committed a similar offense weighs heavily on the
11  decision to impose an officer and director bar. *See SEC v. Standard*, No. 06 Civ. 7736 (GEL),
12  2009 WL 196023 at *33 (S.D.N.Y. 2009) (finding that a defendant's lack of previous securities
13  laws violations is relevant when balancing the *Patel* factors.). It is uncontested that Mr. Dunn
14  has not previously violated any securities laws.

15    C.    *Mr. Dunn was an executive officer at the time he violated securities laws*

16    In general, an officer and director bans is an appropriate solution when the defendant has
17  abused his or her position to engage in fraudulent actions. *See SEC v. Posner*, 16 F.3d 520 (2nd
18  Cir. 1994). For example, in *Posner*, the defendants abused their executive rank to fraudulently
19  acquire smaller public companies and make a significant profit.

20    In *Posner*, the defendants were charged with multiple securities laws violations, including
21  a charge of abusing their fiduciary powers to illegally gain control of a corporation. *Posner*, 16
22  F.3d 520. The defendants "used public companies of which they were officers and directors to
23  engage in rapacious and violative conduct to unjustly enrich themselves at the expense of public
24  shareholders." *Posner*, 16 F.3d 520 (citing *S.E.C. v. Drezel Burnham Lambert Inc.*, 837 F.Supp.
25  587, 589 (S.D.N.Y. 1993)). The defendants realized a net profit of over $7.5 million. *Id*.

26    Although it is true that Mr. Dunn's role when he traded the insider information was that
27  of an executive officer, he did not take advantage of public shareholders to the same degree as

**James C. Mahan**
**U.S. District Judge**

- 4 -

1   the executives in *Posner*. Here, it is evident that Mr. Dunn did not leak the information in an
2   effort to defraud Shuffle Master's investors out of money, or otherwise profit at the expense of
3   shareholders. Rather, Mr. Dunn wanted Broadway show tickets from Mr. Howey and felt that
4   providing the tip would hasten the procurement of the show tickets. Nonetheless, Mr. Dunn
5   abused his fiduciary position, and violated his employment agreement and the company's code of
6   conduct by sharing confidential information with Mr. Howey.

7     D. *Mr. Dunn had a "high degree" of scienter regarding the impropriety of his*
8       *conduct*

9     "Proof of scienter may be satisfied by a showing of recklessness, or conduct which falls
10  far short of the standard of ordinary care . . . ." *Pacific*, 142 F.3d at 1191. However, when a
11  defendant has no record of previous misconduct, there must be a "high degree" of scienter.
12  *Patel*, 61 F.3d at 142. In this case, the SEC has alleged that defendant "must have known" that
13  his actions violated the company's code of conduct as well as his employment agreement and
14  provides evidence to support this allegation.

15    Mr. Dunn signed the employment agreement and agreed to abide by the company's code
16  of conduct and therefore knew that any information he received regarding Shuffle Master was
17  confidential. Mr. Dunn was aware that sharing information with Mr. Howey was improper but
18  chose to ignore company policy when he divulged confidential information.

19    Furthermore, Mr. Dunn was aware that informing Mr. Howey that he was on the SEC's
20  inside trader watch list was inappropriate. *See* (Doc. #52, Ex.1 at 122) In fact, Mr. Dunn had
21  been advised by legal counsel not to contact Mr. Howey at all. *Id*. This evidence meets the
22  burden of proving a "high degree" of scienter. Mr. Dunn's decision to defy his attorney's advice
23  and inform Mr. Howey of the investigation further establishes his degree of knowledge regarding
24  the impropriety of his actions.

25    E. *Mr. Dunn had a minimal economic stake in violating the securities laws*
26    The Supreme Court has held that, when an insider "receives a direct or indirect personal
27  benefit from the disclosure, such as a pecuniary gain," he is said to have an economic stake in the
28

1  violation. *See Dirks v. SEC*, 463 U.S. 646, 664 (S. Ct. 1983). In this case, Mr. Dunn was under
2  pressure by his family to get tickets to the sold out Broadway show, "Jersey Boys." The record
3  reflects that Mr. Dunn constantly nagged Mr. Howey about the tickets. The fact that Mr. Dunn
4  was able to attain tickets to the sold out show qualifies as a pecuniary gain in itself; the
5  difference between the two ticket prices (fair market value and face value) is also a direct
6  economic benefit gained by defendant.

7  The amount of the economic stake should be compared to that of defendants in similar
8  cases. As previously stated, the defendants in *Pacific Bancorp* and *Sargent* made over $100,000
9  from their violations. This is simply not the case here. It is undisputed that being able to buy
10 tickets at face value to a sold out Broadway show is a both a pecuniary and economic benefit.
11 However, this sum pales in comparison to the monetary benefits gained by other defendants in
12 similar cases.

13   *F.*  *Mr. Dunn is not likely to engage in future securities laws violations*

14 The final *Patel* factor analyzes the likelihood that the defendant will engage in future
15 securities laws violations. Without a factual basis supporting a contention that a future violation
16 is likely to occur, a permanent injunction is not an appropriate remedy. *See Patel*, 61 F.3d at
17 142; *see also SEC v. Ingoldsby*, Civ. A. No. 88-1001-MA, 1990 WL 120731, *3 (D. Mass.
18 1990).

19 Here, there is no evidence that defendant is likely to violate the federal securities laws in
20 the future. The record indicates that defendant cooperated fully by giving sworn declarations and
21 answering questions provided by the SEC in 2008. Similarly, defendant's employment history
22 shows no previous improper behavior. After examining defendant's employment history as well
23 as taking into account his conduct throughout this case, the court does not find that Mr. Dunn is
24 likely to commit such an offense again.

25             **Conclusion**

26 Based on the above analysis, a permanent officer and director bar is inappropriate. Factors
27 one (that defendant's violation was not egregious); two (that he is a first-time offender); and six

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  (that, despite his wrongful actions, there is little evidence to prove that defendant is likely to commit
2  a securities law violation again), militate against a permanent officer and director bar. However,
3  factors three (that defendant abused his position as a fiduciary, defendant shared confidential
4  information); four (that defendant had an economic benefit in sharing the information); and five (that
5  defendant showed some scienter in his actions), are evidence that some form of sanction is
6  appropriate.

7  While the court does not agree that the SEC's request for a lifetime ban is appropriate given
8  the instant circumstances, balancing the *Patel* factors supports an officer and director ban for a
9  period of time. Accordingly, the question this court must decide is the severity of the sanction.

10  The court recognizes that defendant has effectively been barred from serving as an officer
11  and director during the course of this litigation. This has resulted in a nearly three-year ban. The
12  court finds that an additional ban may serve to deter future violations, promote respect for the
13  securities regulations, and sufficiently punish Mr. Dunn for his conduct. Accordingly, the court
14  imposes an additional two year ban, resulting in a total restriction of five years from the date when
15  the action was first filed.

16  Therefore,

17  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for an
18  officer and director bar against defendant, R. Brooke Dunn (doc. #90) be, and the same hereby is,
19  GRANTED in part and DENIED in part, consistent with the foregoing.

20  IT IS THEREFORE ORDERED that defendant shall not serve as an officer or director of any
21  company until November 19, 2014.

22  DATED July 30, 2012.

*James C. Mahan*
UNITED STATES DISTRICT JUDGE